IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMES A. DUFFIN,

                              Plaintiff,

                                              Civ. Action No.
        vs.                                   9:08-CV-1342 (TJM/DEP)

LESTER N. WRIGHT, M.D., and the NEW
YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,

                              Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

JAMES A. DUFFIN, *Pro Se*
c/o William Donaldson
153 West 117 Street
Apt. 2
Manhattan, NY  10026

FOR DEFENDANTS:

HON. ANDREW M. CUOMO            JAMES J. SEAMAN, ESQ.
Attorney General of            Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff James A. Duffin, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against the New York State Department of Correctional Services ("DOCS") and Dr. Lester N. Wright, the Associate Commissioner and Chief Medical Officer for the DOCS, in their official capacities, alleging deprivation of his civil rights.  In his complaint, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in that, despite their awareness that he had tested positive in 1993 for hepatitis C,[1] a fact of which he was not aware, they withheld appropriate treatment and administered medications for symptoms attributed by him to his hepatitis C rather than treating their underlying cause, which had the effect of aggravating his condition.  In his complaint, plaintiff seeks an award of damages in the amount of five million dollars for pain and suffering and an additional two million dollars for mental anguish,

---

[1]    Hepatitis C, which courts have described as "a chronic and potentially fatal disease," *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006), is the most common form of postransfusion hepatitis; it can also follow parental drug abuse or other intimate personal contact with an infected person.  This is a common acute sporadic form of hepatitis, and approximately fifty percent of acutely infected persons develop chronic hepatitis.  Although the chronic infection is usually mild and asymptomatic, cirrhosis may result.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 856 (31st ed. 2007).

deliberate indifference and intentional misconduct.

In response to Duffin's complaint defendants have moved seeking its dismissal. In their motion, defendants argue that the Eleventh Amendment bars plaintiff's claims. Having carefully considered defendants' arguments, and without the benefit of any opposition on the part of the plaintiff, I recommend that their motion to dismiss plaintiff's complaint be granted, but that plaintiff should be afforded the opportunity to file an amended complaint.

I.   <u>BACKGROUND</u>[2]

Although he has since been released, during most of the time period relevant to his claims in this action plaintiff was a prison inmate entrusted to the care and custody of the DOCS, and was designated to the Auburn Correctional Facility ("ACF"), located in Auburn, New York. *See generally*

---

[2]   In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). Portions of the background description which follows have been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct.1561 (1992); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Complaint (Dkt. No. 1). According to publically available sources, Duffin was incarcerated at Auburn beginning on February 2, 2006, and was subsequently released to parole on May 7, 2009.  *See* http:nysdocslookup. docs.state.ny.us/GCAOOPOO/WIQ2/WINQ120_ ) (last viewed on August 27, 2009).

On June 7, 2007, during a consultation with his mental health caseworker at Auburn, plaintiff learned that he had tested positive for hepatitis C in 1993, while in DOCS custody.[3]  Complaint (Dkt. No. 1) at p. 5.  Following that discovery, plaintiff's caseworker advised Duffin to submit a sick call slip, which he did.  Complaint (Dkt. No. 1) at pp. 5, 8.  In addition, Duffin wrote to the superintendent at Auburn, as well as to Dr. Lester Wright, the Associate Commissioner and Chief Medical Officer of the DOCS, inquiring why he had not been informed of the earlier diagnosis. *Id.*  Plaintiff also submitted a grievance, no. AUB-50117-07, claiming that he was not receiving treatment for his diagnosed condition.  *Id.* at 10-11. Duffin's grievance was granted, in part, by the facility's inmate grievance

---

[3]   Although plaintiff's complaint does not directly state that he was in DOCS custody in 1993, the same publically available records that confirm his prior incarceration at Auburn also substantiate that he was in fact a New York State prison inmate in DOCS custody at that time.   http:nysdocslookup.docs.state.ny. us/GCAOOPOO/WIQ2/WINQ120_ ) (last viewed on August 27, 2009)

review committee ("IGRC"), which responded by noting that the plaintiff was being tested for the condition and would be treated further for it. *Id.* at p. 10.  That determination was upheld on appeal to the Superintendent at Auburn. *Id.* at p. 11.  In rejecting plaintiff's appeal, the superintendent noted that "[g]rievant is in the process of being worked up for treatments. Although blood work is one part, there are several other tests that need to be done prior to being approved for treatment." *Id.* at p. 11.

In his complaint, plaintiff alleges that while incarcerated he attended sick call on many occasions under the mistaken belief that he suffered from a fever, the flu, or other minor ailments.  Complaint (Dkt. No. 1) at p. 8.  Plaintiff maintains that medications were prescribed by DOCS medical personnel for those symptoms that were counterproductive, in that they not only failed to treat the underlying hepatitis C condition, but in fact had the unfortunate effect of causing further damage to his liver. *Id.*  Plaintiff also argues that his untreated hepatitis C has resulted in blurred vision, requiring him to wear eyeglasses. *Id.* at pp. 8-9.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 2, 2008.[4]  Dkt. No. 1.  As

---

[4]   Plaintiff's complaint in this action was initially filed in the Western District of New York. *See* Complaint (Dkt. No. 1).  The matter was subsequently transferred

5

defendants, plaintiff's complaint names Dr. Wright and the DOCS, and specifically indicates that both are being sued in their official capacities. *Id.* at p. 2. Plaintiff's complaint asserts claims of deliberate medical indifference and denial of equal protection. *Id.* at p. 4.

In March 31, 2009, following service of process, in lieu of answering the complaint defendants filed a motion seeking its dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 13. In their motion, defendants assert that they are entitled to dismissal on the basis of immunity afforded under the Eleventh Amendment. *See id.* Despite the passage of the time for responding, which expired on April 14, 2009, *see* Dkt. No. 13, plaintiff has failed to submit any papers in opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[5] *See also* Fed. R. Civ. P. 72(b).

to this court, however, as the result of the issuance on November 18, 2008 of an order by Senior District Judge Michael A. Telesca. *See* Dkt. No. 5.

[5] Plaintiff's failure to respond to the pending motion does not preclude me from recommending its disposition without the benefit of his submission. *See, e.g., White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001). Such a motion to dismiss tests only the legal sufficiency of the plaintiff's complaint; accordingly, since the plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance,

III.   DISCUSSION

    A.   Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.[6] *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of

---

the court can now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law.  *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000).

      It should be noted, however, that plaintiff's failure to respond in opposition to the pending motion is not without significance.  Under this court's local rules, a party's failure to respond to a properly filed motion can be construed as consent to the granting of that motion, and can provide a basis to grant the motion, so long as the court determines that the moving party has met its burden demonstrating facial entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall*).

[6]   A motion to dismiss for want of subject-matter jurisdiction pursuant to Rule 12(b)(1) is governed by the same familiar standard as a motion to dismiss pursuant to Rule 12(b)(6).  *See Coveal v. Consumer Home Mortgage, Inc.,* 2005 WL 2708388, at *2 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012, 124 S.Ct. 532 (2003)).

Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft,* ___ U.S. ___, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570 127 S.Ct. at 1955).   In addition, when deciding a Rule 12(b)(6) motion, a court must limit its consideration "'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken,'" *Leonard*

8

*F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (quoting

*Allen v. West Point-Pepperell, Inc.,* 945 F.2d 40, 44, (2d Cir. 1991)),

including "proceedings in other courts if those proceedings have relevance

to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1ˢᵗ Cir.

1990).

   When assessing the sufficiency of his complaint against this

backdrop, particular deference must be afforded to Duffin as a *pro se*

litigant whose complaint merits a generous construction by the court when

determining whether it states a cognizable cause of action.  *Erickson*, 551

U.S. at 94 ("'[A] pro se complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers.'")

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976)

(internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir.

2003) (citation omitted); *Donhauser v. Goord,* 314 F. Supp.2d 119, 121,

(N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro*

*se* plaintiff's complaint, a court should not dismiss without granting leave to

amend at least once if there is any indication that a valid claim might be

stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also*

Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so

requires").

    B.   <u>Eleventh Amendment</u>

In their motion to dismiss, defendants argue that sovereign immunity

under the Eleventh Amendment mandates that plaintiff's claims, asserted

against them solely in their official capacities, be dismissed.

The Eleventh Amendment protects a state against suits brought in

federal court by citizens of that state, regardless of the nature of the relief

sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58

(1978). This absolute immunity which states enjoy under the Eleventh

Amendment extends both to state agencies, and in favor of state officials

sued for damages in their official capacities when the essence of the claim

involved seeks recovery from the state as the real party in interest.[7]

*Richards v. State of New York Appellate Division, Second Dep't*, 597 F.

Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S.

85, 89-91, 102 S.Ct. 2325, 2328-29 (1982)), *aff'd* 767 F.2d 998 (2d Cir.

---

[7]   In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S.Ct. 1689, 1693 (2006).

1985).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3105 (1985);  *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 361 (1991).  Eleventh Amendment immunity, however, does not extend to state officials who are sued in their personal or individual capacities.  *Id.* at 30-31; *Schwartz v. Dennison*, 518 F. Supp.2d 560, 570 (S.D.N.Y. 2007) (citing *Farid v. Smith*, 850 F.2d 917, 921 (2d cir. 1988)), *aff'd*, 339 Fed. App'x 28 (2d Cir. 2009).

As a state official sued in his official capacity, Dr. Wright is entitled to Eleventh Amendment immunity.  *See Hafer*, 502 U.S. at 25, 112 S.Ct. at 361.  Similarly, the DOCS "'enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.'"  *Smith v. Spitzer*, 08-CV-6029, 2009 WL 348600, at *1 (W.D.N.Y. Feb. 2, 2009) (quoting *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir. 1999)).[8]  Accordingly, I recommend dismissal of plaintiff's claims for damages against the DOCS and Dr. Wright in his official capacity.

Dismissal of plaintiff's damage claims against the defendants in their

---

[8]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

official capacities does not necessarily end the inquiry.  In *Ex parte Young*,

209 U.S. 123, 28 S.Ct. 441 (1908), the Supreme Court carved out a

"narrow exception to the general rule of Eleventh Amendment immunity

from suit."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 438, 124 S.Ct.

899, 904 (2004).  That exception permits a plaintiff to sue state officials, in

their official capacities, provided the plaintiff seeks only prospective

declaratory or injunctive relief to remedy an ongoing violation of federal

law.  *Frew*, 540 U.S. at 437, 124 S.Ct. at 903; *In re Deposit Ins. Agency*,

482 F.3d 612, 617 (2d Cir. 2007); *Jones v. New York State Div. Of Mil. And*

*Naval Affairs*, 166 F.3d 45, 49-50 (2d Cir. 1999).   This exception, however,

is not applicable in this case since plaintiff's complaint does not seek

prospective declaratory or injunctive relief to remedy an ongoing violation

of law.  See Complaint (Dkt. No. 1) at p. 6 ("relief sought").  Moreover,

even if plaintiff were seeking injunctive relief, it is likely unavailable to him

in light of the DOCS representation that prior to his release once the matter

was brought to the attention of medical personnel at Auburn, the DOCS

began testing the plaintiff as a prelude for treatment of his hepatitis C, and

in light of his release from prison.  *Id.* at p. 11; *see Prins v. Coughlin*, 76

F.3d 504, 506 (2nd Cir. 1996) (citing *Young v. Coughlin*, 866 F.2d 567, 568

12

n. 1 (2d Cir.), *cert. denied*, 492 U.S. 909, 109 S.Ct. 3224 (1989)), and

*Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir.1986)).

C.   <u>Leave to Amend</u>

Where dismissal is based on a *pro se* plaintiff's failure to comply with

pleading conventions, a district court "should not dismiss without granting

leave to amend at least once when a liberal reading of the complaint gives

any indication that a valid claim might be stated."  *Branum*, 927 F.2d at

705.

Although provided the option on his form complaint, plaintiff failed to

specify that he was suing Dr. Wright in his individual capacity.  While it is

difficult for the court to discern from the current complaint what, if any, role

Dr. Wright played in the conduct forming the basis for plaintiff's section

1983 claim, it is not entirely beyond doubt that plaintiff can prove no set of

facts establishing that Dr. Wright, in his individual capacity, violated

plaintiff's civil rights.[9]  *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d

Cir. 1991).  Accordingly, in an abundance of caution, I recommend that

---

[9]    It is well settled in the Second Circuit that "personal involvement of
defendants in alleged constitutional deprivations is a prerequisite to an award of
damages under § 1983."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977),
*cert. denied*, *sub nom.*, *Patterson v. McKinnon*, 434 U.S. 1087, 98 S.Ct. 1282
(1978); *see also Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991).

plaintiff be afforded an opportunity to amend his complaint as to Dr. Wright,

so that he might pursue claims not barred by the Eleventh Amendment –

that is, damage claims against Dr. Wright in his individual capacity.  *Cuoco*

*v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be

read liberally.  Certainly the court should not dismiss without granting leave

to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.") (quotation omitted); *Rhodes*

*v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, at *3 (N.D.N.Y. May 5, 2007)

(Scullin, S.J.) ("[C]ourts should not dismiss a *pro se* lititant's complaint

without granting leave to amend when there is 'any indication that a valid

claim might be stated.'  If, however, the court rules out any possibility that

the amended complaint will state a claim, the court should not grant the

plaintiff leave to amend his complaint.") (quoting *Gomez v. USAA Federal*

*Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999)) (internal quotation marks

and citation omitted).  Any such amended complaint, however, must

include sufficient allegations of fact to show Dr. Wright's personal

involvement in the civil rights violations alleged.

## IV.   SUMMARY AND RECOMMENDATION

Based upon the allegation that in 2007, while incarcerated at Auburn,

he learned that fourteen years earlier he was diagnosed as suffering from hepatitis C while in custody of the DOCS, plaintiff has asserted damage claims against both Dr. Wright, in his official capacity as Associate Commissioner and Chief Medical Officer of the DOCS, and the agency itself.  Since those claims are asserted against the defendant Wright in his official capacity and the DOCS as an arm of the state, they are barred by the Eleventh Amendment.   Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 13) be GRANTED, with prejudice with respect to the DOCS and Dr. Wright in his official capacity, but with leave to amend with respect to Dr. Wright in his individual capacity within thirty days from the date of the assigned district judge's decision regarding this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 26, 2010
            Syracuse, NY



Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Antwon WHITE, Plaintiff,
v.
Dr. J. MITCHELL, Arthur Kill Correctional Facility
Health Services Director, Dennis Breslin, Arthur Kill
Correctional Facility Superintendent and Edward
Checkett, D.D.S., Arthur Kill Correctional Facility
Dentist, Defendants.
**No. 99-CV-8519 (FB).**

Jan. 18, 2001.

Antwon White, Arthur Kill Correctional Facility, Staten
Island, New York, for the Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York,
By: Maria Filipakis, New York, New York, for the
Defendants.

*MEMORANDUM AND ORDER*

BLOCK, J.

**\*1** Plaintiff Antwon White ("White"), a prison inmate,
brings this action *pro se* pursuant to 42 U.S.C. § 1983 and
New York law alleging that defendants were both
negligent and deliberately indifferent to his medical needs
in connection with treatment for hearing loss he suffered
following the extraction of a wisdom tooth. White pleads
that this conduct violated his rights under the Eighth
Amendment, and seeks injunctive relief as well as
compensatory and punitive damages. While White does
not make the distinction clearly, the Court construes the
complaint as naming defendants in both their individual
and official capacities.FN1 Defendants have moved to
dismiss White's complaint pursuant to Fed.R.Civ.P.
12(b)(6) asserting that (1) the complaint fails to state a

claim under the Eighth Amendment for deliberate
indifference to his medical needs; (2) the complaint fails
to allege personal involvement by defendant Dennis
Breslin ("Breslin"), Superintendent of Arthur Kill
Correctional Facility ("Arthur Kill"); and (3) defendants
are entitled to qualified immunity. Although White has
filed no opposition to defendants' motion, the Court can
decide the motion without the benefit of a submission
from him.FN2 For the reasons set forth below, defendants'
motion is denied.

> FN1. "[T]he plaintiff ... should not have the
> complaint automatically construed as focusing on
> one capacity to the exclusion of the other."
> *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993).

> FN2.*See* *McCall v. Pataki,* 232 F.3d 321, 323
> (2d Cir.2000) ("If a complaint is sufficient to
> state a claim on which relief can be granted, the
> plaintiff's failure to respond to a Rule 12(b)(6)
> motion does not warrant dismissal").

BACKGROUND

The following facts are drawn from White's complaint and
the records attached thereto, and are accepted as true for
the purposes of this motion: On August 5, 1999, while
incarcerated at Arthur Kill, White had a wisdom tooth
extracted by defendant Edward Checkett ("Checkett"), a
dentist employed at Arthur Kill. Read broadly, the
complaint seems to allege that Checkett was aware that he
negligently injured White during the extraction procedure,
but failed to provide immediate medical attention.

Soon after the extraction, White began experiencing
ringing and hearing loss in his left ear. On several
occasions, White brought these complaints to the attention
of defendant Jennifer Mitchell ("Mitchell"), Arthur Kill's
Health Services Director. However, Mitchell did not
provide White with prompt medical attention, and, in
particular, failed to refer him to an ear specialist.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

On November 15, 1999, White filed an administrative complaint, pursuant to the Department of Correctional Services' grievance procedures, requesting medical attention for his hearing problem and, "if necessary," a referral to an ear specialist. Inmate Grievance Complaint attached to Compl. White alleges that Breslin denied his grievance, and "failed to direct his subordinates" to provide White with prompt medical attention.[FN3]

FN3. Despite White's allegation to the contrary, the Inmate Grievance Resolution Committee ("IGRC") appears to have accepted White's grievance on November 30, 1999, and directed him to "report back to sick-call." Inmate Grievance Complaint attached to Compl.

On December 9, 1999, White was seen by an audiologist who described the degree of hearing loss in his left ear as "severe-profound." NYSDOCS Request & Report of Consultation attached to Compl. The audiologist recommended further medical consultation to determine the etiology of White's hearing loss and approval for a hearing aid evaluation. *See Id.* White filed the complaint in this action on December 23, 1999.

DISCUSSION

I. Standard on a Motion to Dismiss

*2 In considering a motion to dismiss, the court's task is " 'necessarily a limited one.' " *George Haug Co. v. Rolls Royce Motor Cars Inc.,* 148 F.3d 136, 139 (2d Cir.1998) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[I]n ruling on [the] defendant[s'] motion, the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d. Cir1997). The Court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). In addition, because White is a *pro se* plaintiff, his pleadings must be read liberally. *See Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999);

*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). The Court should grant such a motion only if, after viewing the plaintiff's allegations in the most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Feder v. Frost,* 220 F.3d 29, 32 (2d Cir.2000).

II. Section 1983 Individual Capacity Claims

Defendants contend that White's complaint must be dismissed because it fails to state an Eighth Amendment violation. To state a claim under § 1983 for deprivation of medical treatment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)) (internal quotation marks omitted). The Second Circuit has recently held that refusal to treat a degenerative condition that tends to have serious medical implications if left untreated is a sufficient basis to support the existence of a serious medical need. *See Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (holding that a tooth cavity may be a serious medical condition).

To establish deliberate indifference, the plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance,* 143 F.3d at 703 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "[M]ere medical malpractice' is not tantamount to deliberate indifference," but may rise to the level of deliberate indifference when it "involves culpable recklessness, *i.e.,* an act or failure to act ... that evinces 'a conscious disregard of a substantial risk of harm.' " *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

omitted)).

**\*3** White has alleged a "serious medical condition" under *Gamble.* He states that the ringing in his ear developed into a progressive loss of hearing. Indeed, the audiologist's report referred to above characterizes the degree of hearing loss in White's left ear as being "severe-profound."

*Gamble'* s "deliberate indifference" prong is satisfied in respect to each of the defendants in their individual capacities by a reasonably liberal reading of White's *pro se* complaint. With respect to Checkett, White appears to allege that the injury leading to his hearing loss occurred when Checkett negligently extracted his wisdom tooth. Dental malpractice, without more, does not state a claim cognizable under § 1983. White further alleges, however, that Checkett was deliberately indifferent to his medical condition because, once he knew that he had injured White during the extraction procedure, he failed to render timely medical treatment to abate the harm.

As for Mitchell, White alleges that she ignored his subsequent repeated requests for appropriate treatment while his condition worsened, and failed to supervise Arthur Kills's medical personnel in connection with his treatment. Mitchell, therefore, allegedly knew of White's serious medical need, and consciously failed to act to prevent further harm to White.

Finally, Breslin allegedly failed to adequately supervise White's treatment, and denied his grievance. Defendants assert that the complaint must be dismissed as to Breslin because it fails to allege his personal involvement in the Eighth Amendment violation. Because "[s]ection 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). However, "personal involvement of a supervisory defendant may be shown by evidence that ... the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong...." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). White alleges that his grievance made Breslin

aware that his medical needs were being ignored. White's further allegations that Breslin denied the grievance, and failed to take steps to provide for White's treatment are sufficient to plead Breslin's personal involvement in the violation.

III. Section 1983 Official Capacity Claims

To the extent White has asserted claims seeking damages against defendants in their official capacities, they are barred by sovereign immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). However, the complaint also seeks injunctive relief against the defendants. Injunctive relief may be obtained in a § 1983 action for deliberate indifference to a serious medical need, even absent an official's personal involvement, if the complaint alleges that the official had "responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need." *Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir.1996); *see also New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 135 (2d Cir.1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) ("the Eleventh Amendment does not bar federal courts from issuing an injunction against a state official who is acting contrary to federal law"). White alleges that defendants have denied him treatment for his progressive hearing loss. If he can prove his contentions, he may be entitled to injunctive relief.

IV. Qualified Immunity

**\*4** The defendants enjoy qualified immunity from White's suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Even where a prisoner's rights are clearly established, "qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.' " *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)).

Defendants contend that their actions were objectively

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

reasonable. (*See* Def. Mem. at 9). However, because the complaint adequately alleges a claim for deliberate indifference, defendants are not entitled to qualified immunity on their Fed.R.Civ.P. 12(b)(6) motion. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (the issue when considering qualified immunity in the context of Fed.R.Civ.P. 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). This allegation, if proved, could constitute a violation of White's Eighth Amendment rights, and more facts are necessary to resolve the qualified immunity question.

V. State Law Claims

As referred to above, the complaint, liberally construed, also alleges dental malpractice against Checkett and negligent supervision against Breslin and Mitchell in their individual capacities. Although theses claims are not cognizable in an action under § 1983, they do allege state law claims. Defendants do not address these claims in their motion to dismiss. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over these pendent claims. *See Shimon v. Department of Corr. Serv. for the State of N.Y.,* No. 93 Civ. 3144(DC), 1996 WL 15688, at *3 (S.D.N.Y. Jan. 17, 1996) (Section 24 of New York Correction Law does not bar federal court from hearing pendent state law medical malpractice claim asserted against New York State Department of Correctional Services employee in employee's individual capacity). However, the Eleventh Amendment bars White's claims for damages or injunctive relief against the defendants in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Fleet Bank, Nat'l Ass'n v. Burke,* 160 F.3d 883, 891 (2d Cir.1998).

CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.

E.D.N.Y.,2001.
White v. Mitchell

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 348600 (W.D.N.Y.)
(Cite as: 2009 WL 348600 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Andre SMITH, Plaintiff,
v.
Governor Eliot SPITZER, Commissioner Brian Fischer,
Commissioner Fredrick Lamy, Commissioner Frances
Sullivan, Chairman Daniel Stewart, Superintendent
David Napoli, Corrections Officer R.McCracken, and
Hearing Officer J. Esgrow, Defendants.
**No. 08-CV-6029CJS.**

Feb. 6, 2009.

Andre Smith, Pine City, NY, pro se.

DECISION AND ORDER

CHARLES J. SIRAGUSA, District Judge.

**\*1** Plaintiff Andre Smith, an inmate proceeding *pro se,* has
been granted permission to proceed *in forma* pauperis.
The U.S. Marshal was directed to serve copies of the
Summons and Complaint upon defendants then-Governor
Eliot Spitzer, Commissioner Brian Fischer, Commissioner
Fredrick Lamy, Commissioner Frances Sullivan, Chairman
Daniel Stewart, Superintendent David Napoli, Corrections
Officer R. McCracken, and Hearing Officer J. Esgrow.

Service was executed on Commissioner Fredrick Lamy,
Chairman Daniel Stewart and Commissioner Frances
Sullivan. The Clerk of the Court has filed Entry of Default
as to these defendants. Plaintiff filed a motion for Default
Judgement with respect to these defendants, and there has
been no response or opposition from the defendants. Prior
to determining whether to grant default judgment against
these defendants, however, the Court reviews the claims to
specify the nature and extent of plaintiff's claims against

these three defendants. Plaintiff claims that
former-Governor Elliot Spitzer, Commissioner Fredrick
Lamy, Chairman Daniel Stewart and Commissioner
Frances Sullivan created and implemented state
regulations and policies regarding his mail that violates his
First Amendment rights.

A prerequisite for liability under § 1983 is personal
involvement by the defendants in the alleged constitutional
deprivation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d
Cir.1997); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d
Cir.1986). Such involvement on the part of a supervisory
official may be alleged by asserting, among other things,
that the official "created a custom or policy fostering the
violation or allowed the custom or policy to continue after
learning of it ...". *Sealey v. Giltner,* 116 F.3d at 51 (citing
*Williams v. Smith,* 781 F.2d at 323-24). Accepting
plaintiff's allegations as true, he has alleged the personal
involvement of these defendants as individuals.

To the extent that plaintiff is suing these defendants in
their official capacity, however, the Court considers
whether the Eleventh Amendment bars the claims against
them absent their consent to such suit or an express
statutory waiver of immunity. *See Pennhurst State School
& Hospital v. Halderman,* 465 U.S. 89, 98-100, 104 S.Ct.
900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment bar
extends to agencies and officials sued in their official
capacities. *Kentucky v. Graham,* 473 U.S. 159, 166, 105
S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, for the purpose
of the Eleventh Amendment analysis, claims made against
the defendants in their officials capacities are really claims
against the State of New York. *Pietraszewski,* 1997 WL
436763, at \*1 n. 2;*Shimon v. Department of Correctional
Services for State of N.Y.,* 1996 WL 15688, at \*2
(S.D.N.Y. January 17, 1996) (suit against DOCS'
employee in his official capacity is really a suit against the
State). Here, the defendants have not consented to be sued.
*Pennhurst,* 465 U.S. at 99-101. "An official arm of the
state," such as the New York State Department of
Corrections, "enjoys the same Eleventh Amendment
immunity from suit in federal court as is enjoyed by the
state itself." *Posr v. Court Officer Shield No. 207,* 180
F.3d 409, 414 (2d Cir.1999). Claims seeking damages
from these defendants in their official capacities are be
barred by the Eleventh Amendment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 348600 (W.D.N.Y.)
(Cite as: 2009 WL 348600 (W.D.N.Y.))

**\*2** Plaintiff is also seeking injunctive relief regarding the continuing alleged violations of his First Amendment rights. Thus, plaintiff's claims against the State of New York and the defendants in their official capacity for which he is seeking proscriptive injunctive relief may be exempt from the Eleventh Amendment bar. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland, Inc. v. Public Service Com'n of Maryland,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Therefore, the claims raised against these defendants in their official capacity are limited to plaintiffs request for injunctive relief, and, in reality, are raised against the State of New York.

Plaintiff has established that these three defendants have been served and has obtained the Clerk's entry of default. Plaintiff has submitted papers in support of his motion in which he alleges that the defendants' default is willful and that he will suffer prejudice if default judgment is not granted. Accordingly, plaintiff has set forth the basic requirement granting default judgment. Nevertheless, the default cannot be granted without a determination of the remedies. Accordingly, the Court shall set a date for an inquest by separate order.

With respect to the remaining defendants-former-Governor Elliot Spitzer, Commissioner Brian Fischer, Superintendent David Napoli, Corrections Officer R. McCracken, and Hearing Officer J. Esgrow-the U.S. Marshal has not provided proof of service. Therefore, plaintiff has not established that he is entitled to Clerk's Entry of Default with respect to these defendants, and has not set forth a basis for default judgment against these remaining defendants.

Plaintiff is entitled, however, to additional time and support regarding service. Once a plaintiff is granted permission to proceed *in forma pauperis,* the responsibility for effecting service of the summons and complaint shifts from the plaintiff to the court. *See* 28 U.S.C. § 1915(d); *Wright v. Lewis,* 76 F.3d 57, 59 (2d Cir.1996); *and see Valentin v. Dinkins,* 121 F.3d 72 (2d. Cir.1997) (per curiam); *Moore v. Jackson,* 123 F.3d 1082, 1085-86 (8th Cir.1997) (If a *pro se* prisoner provides the information necessary to identify the defendant, courts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of Fed.R.Civ. 4(m)).

Accordingly, this Court finds that there is "good cause" to extend the time in which plaintiff may serve the summons and complaint upon the remaining defendants for an additional 120 days, Fed.R.Civ.P. 4(m); *see Romandette v. Weetabix,* 807 F.2d 309, 311 (2d Cir.1986) (interpreting Rule 4(j), the predecessor subdivision to Rule 4(m)); *Armstrong v. Sears,* 33 F.3d 182, 188 (2d Cir.1994); *see generally Husowitz v. American Postal Workers Union,* 190 F.R.D. 53, 57-58 (E.D.N.Y.1999) (collecting cases).

**\*3** The Clerk of the Court is directed to again cause the United States Marshal to serve the Summons and Complaint on the New York State Attorney General Andrew Cuomo, former-Governor Elliot Spitzer, Commissioner Brian Fischer, Superintendent David Napoli, Corrections Officer R. McCracken, and Hearing Officer J. Esgrow.

Additionally, pursuant to *Valentin v. Dinkins,* 121 F.3d 72 (2d. Cir.1997) (per curiam), the Court directs the Clerk of the Court to send a copy of the Complaint, together with this Order, to the Assistant Attorney General in Charge, 144 Exchange Street, Rochester, New York 14614. The Court requests that the Assistant Attorney General ascertain proper addresses for these defendants. The Assistant Attorney General need not undertake to defend or indemnify the individual defendants at this juncture. This order merely provides a means by which plaintiff may properly serve the remaining defendants as instructed by the Second Circuit in *Valentin.* The New York State Attorney General is hereby requested to produce the information specified above by **April 30, 2009.** Once this information is provided amended summonses shall be issued and the Court shall direct service on the remaining defendants at the addresses provided.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 348600 (W.D.N.Y.)
(Cite as: 2009 WL 348600 (W.D.N.Y.))

## ORDER

IT IS HEREBY ORDERED, that plaintiff's motion for default judgment will be addressed through an inquest that will be arranged in a separate Order;

FURTHER, that plaintiff's time in which to serve the Summons and Complaint is extended an additional 120 days from the date of entry of this Order;

FURTHER, that the Clerk of the Court is directed to send a copy of the Complaint, together with this Order, to the Assistant Attorney General in Charge, 144 Exchange Street, Rochester, New York 14614;

FURTHER, that the Assistant Attorney General is hereby requested to respond to this Order by **April 30, 2009;**

FURTHER, that the Clerk of the Court is directed to cause the United States Marshal to serve the summons and complaint upon the New York State Attorney General Andrew Cuomo, former-Governor Elliot Spitzer, Commissioner Brian Fischer, Superintendent David Napoli, Corrections Officer R. McCracken, and Hearing Officer J. Esgrow; and

FURTHER, pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2009.
Smith v. Spitzer
Slip Copy, 2009 WL 348600 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Deryck RHODES, Plaintiff,
v.
M. HOY, Correctional Officer; Daniels, Grievance
Supervisor; E. Carpenter, Correctional Officer; and
Gary Greene, Warden (Superintendent), Defendants.
**No. 9:05-CV-836.**

May 5, 2007.

Deryck Rhodes, Attica, NY, Plaintiff pro se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Stephen M. Kerwin, Assistant Attorney General, of
counsel, Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

SCULLIN, Senior Judge.

**I. INTRODUCTION**

**\*1** Plaintiff commenced this action pursuant to 42 U.S.C.
§ 1983, alleging that Defendants Hoy and Carpenter,
corrections officers at Great Meadow Correctional
Facility, where Plaintiff was housed at all relevant times,
assaulted him in violation of his Eighth Amendment right
to be free from cruel and unusual punishment. In addition,
he asserted that Defendant Daniels, a grievance
supervisor, and Defendant Greene, the prison warden,
unlawfully interfered with his efforts to pursue the matter
internally through the inmate grievance process in
violation of the Due Process Clause of the Fourteenth
Amendment.

**II. BACKGROUND**

Plaintiff contends that, on June 13, 2004, while he was on
his way to the dining area, Defendant Hoy directed him to
submit to a pat-frisk search. During the course of this
search, Defendant Hoy, with the assistance of Defendant
Carpenter, allegedly banged Plaintiff's head against a wall,
causing him injury. Thereafter, Plaintiff was taken to the
facility's clinic where he was treated for a laceration above
his right eye and bruises to his ribs. As a result of this
incident, Plaintiff was issued a misbehavior report,
alleging several rule violations resulting in a Tier III
hearing with mixed findings.

On July 7, 2004, Plaintiff filed a grievance alleging that
Defendants Hoy and Carpenter had assaulted him.
Additionally, he filed a petition requesting that officials
take disciplinary action against these Defendants pursuant
to New York Civil Service Law § 75. Plaintiff maintains
that his grievance should have been designated as "class
forty-nine," which relates to claims of staff misconduct,
but that Defendant Daniels coded it as a "twenty-seven,"
which relates to Tier II and Tier III policies. Upon
reviewing the grievance, the Inmate Grievance Review
Committee recommended that it be forwarded to the
superintendent of the facility because it involved
allegations of staff misconduct. On July 26, 2004,
Defendant Superintendent Greene denied the grievance,
stating that the investigation into the matter failed to yield
any evidence to support Plaintiff's claims. On appeal, the
Central Office Review Committee unanimously affirmed
that decision.

On or about September 8, 2004, Plaintiff submitted a
second grievance, alleging that Defendant Daniels falsified
the earlier grievance and that Defendant Greene failed to
rectify the error. After deadlocking in its consideration of
this grievance, the Inmate Grievance Review Committee
forwarded the complaint to Defendant Greene, who denied
it. Upon review, the Central Office Review Committee
accepted Plaintiff's grievance in part, stating that the
earlier grievance should be investigated in light of the
allegation of staff assault. There is no indication in
Plaintiff's complaint about the result of that investigation.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

In response to Plaintiff's claims, Defendants Daniels and Green filed a motion to dismiss on the ground that, even if Plaintiff's allegations about their conduct are true, they fall far short of establishing a constitutional deprivation because a prison inmate has no constitutional right to participate in the established grievance process.[FN1] On August 28, 2006, Magistrate Judge Peebles issued a Report and Recommendation, in which he recommended that this Court grant Defendants' motion to dismiss. On September 8, 2006, Plaintiff filed his objections to that recommendation.

FN1. The other two Defendants, Defendants Hoy and Carpenter, filed a joint answer to Plaintiff's complaint.

### III. DISCUSSION

#### A. Standard of review

*2 The district court reviews *de novo* those portions of the magistrate judge's report-recommendation and order to which a party objects, *see Singleton v. Caron*, No. 9:03-CV-00455, 2006 WL 2023000, *1 (N.D.N.Y. July 18, 2006)* (citations omitted), and for clear error those portions to which a party does not object, *see Stokes v. Artus*, No. 05 Civ.1975, 2006 WL 1676437, *2 (S.D.N.Y. June 14, 2006)* (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). The district court reviewing a magistrate judge's report-recommendation and order " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Everson v. New York City Transit Auth.*, No. 1:02-cv-1121, 2007 WL 539159, *3 (E.D.N.Y. Feb. 16, 2007)* (citing 28 U.S.C. § 636(b)(1)).

#### B. Plaintiff's procedural due process claim

"To state a claim under § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States....' " *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). More specifically, to establish a due process claim, the

plaintiff must allege that he has "been deprived of a protected liberty interest" " 'in order for the due process requirements of the Fourteenth Amendment to apply....' " *Id.* (citation omitted). "Prison grievance procedures [, however,] do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Id.* (citations and footnote omitted).[FN2]

FN2. *See also Davis v. Buffardi*, No. 0:01CV0285, 2005 WL 1174088, *3 (N.D.N.Y. May 4, 2005)* (holding that "participation in an inmate grievance process is not a constitutionally protected right" (citations omitted)); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y.2005) (holding that "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim" (citation omitted)); *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)* (holding that "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983" (citation omitted)).

Applying these principles to the present case, the Court agrees with Magistrate Judge Peebles' conclusion that Plaintiff cannot establish a due process claim against Defendants Daniels and Greene. Since state-created inmate grievance procedures do not create a protected liberty interest, the protections of the Due Process Clause of the Fourteenth Amendment are not implicated even if Defendants' conduct made it impossible for Plaintiff to receive an impartial decision within the grievance process.

This does not mean, however, that Plaintiff is without recourse to redress the alleged injuries he suffered as a result of his encounter with Defendants Hoy and Carpenter. He has the right, which he exercised, to appeal the determination of the Tier III hearing officer and, ultimately, he has the right to have this Court review the prison officials' final determination if that decision violated his constitutional rights and the prison grievance system did not satisfactorily redress the wrong about

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

which he complains. Therefore, Plaintiff's claims regarding the incident itself, i.e., his Eighth Amendment claims against Defendants Hoy and Carpenter, are properly before this Court for its review. However, as the court noted in *Torres,* "any alleged inadequacies or unfavorable decisions concerning the prison's internal grievance process do not give [Plaintiff] the right, as a matter of course, to have the Court consider not only the Eighth Amendment charge which was the subject of his grievance, but also due process allegations based on failures in the grievance system." *Torres,* 246 F.Supp.2d at 342 n. 1.

*3 Accordingly, the Court adopts Magistrate Judge Peebles' recommendation and grants Defendants' motion to dismiss Plaintiffs' claims against Defendants Greene and Daniels because Plaintiff did not suffer a constitutional deprivation as the result of their conduct.

**C. Leave to replead**

Rule 15 of the Federal Rules of Civil Procedure authorizes a court to grant leave to amend a complaint when justice so requires. *See* Fed.R.Civ.P. 15(a). If a complaint does not comply with certain standards, ordinarily, a court will grant the plaintiff leave to file an amended complaint that conforms to the requirements of the federal rules. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (citations omitted). Moreover, courts should not dismiss a *pro se* litigant's complaint without granting leave to amend when there is " 'any indication that a valid claim might be stated.' " *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 795, 795-96 (2d Cir.1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). If, however, the court rules out any possibility that the amended complaint will state a claim, the court should not grant the plaintiff leave to amend his complaint. *See id.* at 796.

Applying these principles to the present case, Magistrate Judge Peebles concluded that, because Plaintiff could not assert a cognizable claim against Defendants Greene and Daniels, it would be futile to allow him to replead. *See* Report and Recommendation at 14. This Court agrees. The problem with Plaintiff's claims against these Defendants is substantive and, therefore, repleading will not cure the deficiencies. *See Cuoco v. Moritsugu,* 222

F.3d 99, 112 (2d Cir.2000) (citation omitted) (denying request for leave to replead because it would be futile). Accordingly, the Court adopts Magistrate Judge Peebles' recommendation and denies Plaintiff the opportunity to replead his claims against Defendants Greene and Daniels.

**IV. CONCLUSION**

After carefully reviewing Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' August 28, 2006 Report and Recommendation is ADOPTED IN ITS ENTIRETY; and the Court further

**ORDERS** that Defendants Greene's and Daniels' motion to dismiss is GRANTED; and the Court further

**ORDERS** that leave to amend the claims against Defendants Greene and Daniels is **DENIED AS FUTILE;** and the Court further

ORDERS that this matter is referred to Magistrate Judge Peebles for all further pretrial matters.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, U.S. Magistrate Judge.

Plaintiff Deryck Rhodes, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, which contains two discrete though interrelated claims, plaintiff asserts that he was assaulted by defendants M. Hoy and E. Carpenter, both corrections officers at the facility in which he was housed

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

at the relevant times, and that the remaining two defendants including defendant Daniels, a grievance supervisor, and Gary Greene, the prison warden, unlawfully interfered with his efforts to pursue the matter internally through the established inmate grievance process. Plaintiff's complaint seeks the recovery of damages, including for mental anguish and emotional distress.

**\*4** In response to plaintiff's complaint, defendants Daniels and Greene have moved seeking its dismissal, arguing that plaintiff's allegations regarding their conduct, even if accepted as true, fall short of establishing a constitutional violation since a prison inmate has no constitutional right to participation in the established grievance process. Because plaintiff's complaint, even when generously construed, fails to allege a constitutional violation on the part of defendants Daniels and Greene I recommend that their motion be granted.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of the case, the following recitation is drawn from plaintiff's complaint, which is interpreted in a light most favorable to him, with all inferences drawn and ambiguities resolved in his favor. *Donhauser v. Goord,* 314
>
> F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Complaint (Dkt. No. 1). At the relevant times, plaintiff was confined in the Great Meadow Correctional Facility, located in Comstock, New York. *Id.*

On June 13, 2004, while in route to the facility's dining area for breakfast, plaintiff was directed by defendant Hoy to submit to a "pat-frisk" search. Complaint (Dkt. No. 1) Attachment ¶ 9. Defendant Hoy, assisted by defendant Carpenter, proceeded to conduct a search of the plaintiff,

during the course of which plaintiff's head was banged against the wall, causing him to suffer injury. *Id.* ¶¶ 9-10. Plaintiff was handcuffed and taken to the facility's clinic for medical attention, where he was treated for a laceration above his right eyebrow and bruises to his ribs. *Id.* ¶¶ 11-13. As a consequence of the incident plaintiff was issued a misbehavior report alleging several rule violations, ultimately resulting in a Tier III hearing being conducted with mixed findings.[FN2]

> FN2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

In an effort to seek redress for the assault, plaintiff filed a grievance on July 7, 2004 alleging that he had been assaulted by defendants Hoy and Carpenter, and additionally filed a petition urging that disciplinary action be taken against the two corrections officers pursuant to N.Y. Civil Service Law § 75.[FN3] Complaint (Dkt. No. 1) ¶ 17. While plaintiff maintains that his grievance should have been designated as "class forty-nine", relating to claims of staff misconduct, when processing Rhodes' complaint defendant Daniels coded it as a "twenty-seven", which relates to Tier II and Tier I I I policies.[FN4] Complaint (Dkt. No. 1) ¶ 18 & Exh. 2. Upon review the inmate grievance review committee ("IGRC") recommended that plaintiff's grievance be forwarded to the superintendent, in light of the fact that it involved allegations of staff misconduct. *Id.* ¶ 19 & Exh. 1. The grievance was ultimately denied on July 26, 2004 by Superintendent Greene, who asserted in his response that the matter had been investigated without yielding any evidence that would support plaintiff's allegations. *Id.* That determination was unanimously affirmed on appeal to the central office review committee ("CORC"). *Id.* ¶ 20 & Exh. 3.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

FN3. That section provides, in pertinent part, that "[a] person described in ... this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civil Service Law § 75.

FN4. Implicit in plaintiff's submission is the assertion that had his grievance been properly coded to reflect that he was claiming staff misconduct, it would have been handled differently than an ordinary inmate complaint.

On or about September 8, 2004 plaintiff submitted a second inmate grievance, alleging that defendant Daniels had falsified the earlier grievance and that defendant Greene had failed to rectify the error. Complaint (Dkt. No. 1) ¶ 21 & Exh. 4. After deadlocking in its consideration of plaintiff's second grievance, the IGRC forwarded it on to defendant Greene, who denied it. Complaint (Dkt. No. 1) ¶¶ 21-22. Upon review of that determination, at plaintiff's request, the CORC accepted plaintiff's grievance in part, noting that the earlier grievance should be investigated in accordance with DOCS Directive No. 4040, § VIII in light of the plaintiff's allegations of staff assault.[FN5] Complaint (Dkt. No. 1) ¶ 23 & Exh. 5. The CORC further directed that the matter be returned for review by that body following the completion of the required investigation.[FN6] Complaint (Dkt. No. 1) ¶ 23 & Exh. 5.

FN5. DOCS Directive No. 4040, § VIII, provides, in pertinent part, that

(4) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall either:

(i) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance; or

(ii) request an investigation by the inspector general's office or, if the superintendent

determines that criminal activity is involved, by the New York State Police Bureau of Criminal Investigation.

(5) Within 12 working days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the IGP clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(6) If the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC. This is done by filing a notice of decision to appeal with the IGP clerk.

(7) If the grievant wishes to appeal the superintendent's response to the CORC, he must file a notice of decision to appeal with the inmate IGP clerk within four working days of receipt of that response.

7 N.Y.C.R.R. § 701.11

FN6. There is no indication in plaintiff's complaint as to the results of the ensuing investigation.

II. *PROCEDURAL HISTORY*

**\*5** Plaintiff commenced this action on July 5, 2005. Dkt. No. 1. On September 30, 2005, following service, two of the named defendants-Corrections Officers M. Hoy and E. Carpenter-jointly interposed an answer to plaintiff's complaint. Dkt. No. 13. In lieu of answering, however, the remaining two defendants moved, also on September 30, 2005, seeking dismissal of plaintiff's claims against them. Dkt. No. 14. In their motion, defendants Daniels and Greene argue that plaintiff's complaint fails to implicate any participation on their parts in the constitutional

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

violations alleged, and as such they are entitled to dismissal of plaintiff's claims against them. Plaintiff has since responded to defendants' motion in a submission filed with the court on October 21, 2005. Dkt. No. 16.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements. Under that provision, a court may not dismiss a complaint unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief.' " *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper,* 378 U.S. at 546, 84 S.Ct. at 1734; *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.) (citation omitted), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing rules require only that the defendant be afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103; *see* *Phillips v. Girdich,* 408 F.3d 124, 127-29 (2d Cir.2005).

When assessing the sufficiency of a complaint against this backdrop, particular deference must be afforded to a *pro se* litigant; a court must generously construe a *pro se* plaintiff's complaint when determining whether it states a cognizable cause of action. *Davis,* 320 F.3d at 350 (citations omitted). A complaint drafted by an uncounselled plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997) (citation omitted). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim could potentially be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

B. *Procedural Due Process Violation*

**\*6** Plaintiff's claims against defendants Daniels and Greene revolve around actions taken with regard to the first grievance filed by him, complaining of the assault upon him by two prison workers, as well as their failure to rectify the error when responding to his second grievance, which focused upon the alleged falsification of grievance documents. Defendants maintain that these allegations, even if true, would not support the finding of a constitutional violation.

The establishment and implementation of an administrative grievance procedure affords prison inmates a means for airing of concerns regarding prison conditions that can be resolved prior to commencement of formal litigation, and such a process can serve as an effective mechanism for dealing with such internal matters without having to burden the courts with potentially unnecessary litigation. Toward that end, as an encouragement for inmates to pursue this avenue of redress, the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), precludes commencement of an action brought to address prison conditions, including under 42 U.S.C. § 1983, until internal available administrative remedies are fully exhausted. 42 U.S.C. § 1997e(a).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

PLRA. *See* *Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The New York Inmate Grievance Program consists of a three-step review process. First, a written grievance is submitted to the IGRC within fourteen days of the incident.[FN7] 7 N.Y.C.R.R. § 701.7(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. 7 N.Y.C.R.R. § 701.7(a). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.7(b). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the CORC, which makes the final administrative decision. *Id.* § 701.7(c). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

> FN7. The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances." 7 N.Y.C.R.R. § 701.7(a)(1).

Despite the fact that New York prison inmates are required to avail themselves of this established inmate grievance procedure as a necessary predicate to commencing an action complaining of prison conditions, and resort to that grievance process is regarded as protected activity under the First Amendment which insulates inmates against retaliation for engaging in such activity, *see* *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996), there is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi,* No. 0:01-CV0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369-70 (W.D.N.Y.2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citations omitted); *Cancel v. Goord,* No. 00. CIV.2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance

procedures are not required by the Constitution and therefore a violation fo such procedures does not give rise to a claim under § 1983") (citations omitted). While the Constitution does mandate that inmates are afforded access to the courts, *see* *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495 (1977), actions such as those alleged on the part of defendants Daniels and Greene are not tantamount to interference with that right, since under the PLRA a plaintiff whose access to the grievance process has been hindered or foiled by actions of prison officials are excused from the PLRA's exhaustion requirement and permitted to file suit without having completed that process. *See* *Hemphill v. New York,* 380 F.3d 680, 686-91 (2d Cir .2004).

**\*7** In addition to arguing that the interference by defendants Greene and Daniels with his right of access to the grievance procedure is in and of itself a constitutional violation, plaintiff maintains that their actions were tantamount to a deprivation of procedural due process. The lynchpin of a procedural due process claim is a showing that the plaintiff has been deprived of a cognizable property or liberty interest, without due process of law. *See* *Ferrara v. Superintendent, New York State Police,* 26 F.Supp.2d 410, 413 (N.D.N.Y.1998) (Kahn, J.) In this instance, plaintiff's complaint fails to disclose that he suffered any such deprivation as a result of defendants' alleged actions. I note in that regard that plaintiff's complaint fails to disclose the suffering of any injuries as a result of defendants' actions. While defendant Daniels may have miscoded plaintiff's grievance, thereby resulting in it have been improperly routed and handled, it appears that the error was remedied, with the grievance ultimately having been treated as involving staff misconduct and having been referred by the CORC for investigation.

For all the foregoing reasons it does not appear that plaintiff has suffered a constitutional deprivation at the hands of defendants Daniels and Greene. I therefore recommend that those defendants' motion seeking dismissal of plaintiff's claims against them be granted.

### C. *Leave to Replead*

Ordinarily, a *pro se* plaintiff whose claims are found to be

Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)
(Cite as: 2007 WL 1343649 (N.D.N.Y.))

insufficient to withstand scrutiny under Rule 12(b)(6) should be granted leave to replead at least once to afford him or her the opportunity to cure any perceived deficiencies and assert a proper claim. *Branum,* 927 F.2d at 704-05. When, however, in reviewing the factual allegations lodged in a complaint it is clear to the court that amendment would be futile, and that no cognizable claim could be asserted based upon the circumstances presented, leave to replead may be denied. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") In this instance I make such a finding, concluding that the claims deemed dismissible in this motion are futile and, accordingly, recommend that plaintiff be denied the opportunity to replead.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's claims in this action against defendants Greene and Daniels are limited to their having allegedly mishandled plaintiff's grievance challenging an alleged assault upon him by two corrections officers at Great Meadow. Because plaintiff, as a prison inmate, does not enjoy a constitutional right of access to the grievance process, and in any event there is no indication that plaintiff suffered any constitutional injury or deprivation as a result of the actions of defendants Daniel and Greene, I recommend that the dismissal motion be granted and plaintiff's claims against them be dismissed.

**\*8** Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion be GRANTED, and plaintiff's claims against defendants Daniels and Greene be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d

85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties electronically and/or by regular mail.

N.D.N.Y.,2007.
Rhodes v. Hoy
Not Reported in F.Supp.2d, 2007 WL 1343649 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.